## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RICKY NELSON, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>                    v.<br><br>CONDUENT BUSINESS SERVICES LLC d/b/a EPPICARD COMERICA, INC. and COMERICA BANK,<br><br>     Defendants. | Civil Action No. 1:18-cv-00669-SDG |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Ricky Nelson's motion for class certification [ECF 47]. Following a careful review of the record, and with the benefit of oral argument, Nelson's motion for class certification is **DENIED**. Additionally, Defendants' motion for leave to file matters under seal [ECF 53] is **GRANTED**.[1]

---

[1]  In this Order, the Court refers to some information that the parties filed under seal. The Court does not find that the cited information needs to be sealed, notwithstanding the parties' confidentiality designations.

## I.   BACKGROUND[2]

Nelson is an occasional recipient of unemployment benefits from the Georgia Department of Labor (DOL).[3] Rather than sending recipients of unemployment benefits physical checks, the DOL distributes funds through the "EPPICard" program, a public-private partnership between Defendants Conduent Business Services LLC d/b/a Eppicard Comerica, Inc. (Conduent), Comerica Bank (Comerica), and the State of Georgia.[4] Unemployment benefits are credited to a Comerica-issued debit card for the recipient's personal use, which Conduent services.[5] In addition to Georgia, many states across the country have switched to this debit card program to distribute public benefits.[6]

When a debit card is issued to a recipient, it is accompanied by a standard form "Terms of Use" agreement that outlines the terms and conditions governing

---

[2]   Unless otherwise indicated, the background facts summarized herein are drawn from the well-pleaded allegations in the Complaint. The Court will address the merits underlying Nelson's allegations to the "extent . . . they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

[3]   ECF 1, ¶ 1.

[4]   *Id.* ¶¶ 14–15.

[5]   *Id.* ¶ 18.

[6]   *Id.* ¶ 17.

its use.[7] The Terms of Use contains procedures detailing the process a cardholder must follow if he or she believes the debit card has been lost, stolen, or compromised through unauthorized or fraudulent charges.[8] For example, the Georgia version of the Terms of Use informs cardholders of the following regarding liability from unauthorized or fraudulent charges:

> Tell us AT ONCE if you believe your Card or PIN has been lost or stolen. . . . If you tell us within two business days, you can lose no more than $50 if someone used your Card or PIN without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your Card or PIN, and we can prove that we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500. . . . Also, if the written transaction history or other Card transaction information provided to you shows transfers that you did not make, tell us at once. If you do not tell us within 60 days after the transmittal of such information, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time.[9]

---

[7]  *Id*. ¶ 19.

[8]  *Id*. ¶ 22.

[9]  *Id*. ¶ 25.

Despite having received unemployment benefits, Nelson alleges he has not used his EPPICard.[10] Nelson instead elected to lock his card in his personal safe to allow the benefits to accumulate.[11]

On July 26, 2017, Nelson discovered $12,506.63 in unauthorized transactions in his EPPICard account.[12] Nelson disputed these charges, all of which occurred between February 18, 2017 and June 5, 2017.[13] Conduent's Fraud Services Department subsequently investigated Nelson's account for fraudulent activity.[14] On September 8, 2017, the Fraud Services Department sent Nelson a letter informing him that they had completed their investigation and could not confirm that fraudulent activity had occurred in his account.[15] On September 24, 2017, Nelson sent a letter requesting a secondary review of the allegedly fraudulent activity.[16] On December 11, 2017, the Fraud Services Department sent Nelson a letter indicating that they had reopened the investigation, still could not confirm

---

[10]   *Id*. ¶ 30.

[11]   *Id*.

[12]   *Id*. ¶¶ 33–35.

[13]   *Id*. ¶¶ 33–35, 42.

[14]   *Id*. ¶¶ 37–38; ECF 47-20.

[15]   ECF 1, ¶ 50; ECF 47-23.

[16]   ECF 1, ¶¶ 56–57; ECF 47-24.

that fraudulent activity occurred, and again denied Nelson's claim for a refund of the unauthorized charges.[17]

Nelson filed his putative class action Complaint on February 14, 2018, invoking the Court's jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).[18] Nelson asserts claims for breach of contract/covenant of good faith and fair dealing (Count I); conversion (Count II); unjust enrichment (Count III); and declaratory relief (Count IV).[19] Nelson also seeks to represent the following putative class:

> All Conduent and Comerica EPPICard®, Way2Go Card®, and GO Program® customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, reported fraudulent charges on their accounts and were denied a refund of such charges in violation of Defendants' Terms of Use (the "Class").[20]

---

[17] ECF 1, ¶ 58; ECF 47-25.

[18] ECF 1.

[19] *Id*.

[20] ECF 67. In the Complaint, Nelson defined the proposed class as all customers who incurred fraudulent charges on their accounts and were denied refunds [ECF 1, ¶ 78]. Nelson's proposed amendment, which Nelson requested and the Court granted during oral argument on the instant motion, substitutes the terms "incurred" for "reported." [ECF 67.] *See Prado'Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits.").

In support of his class allegations, Nelson asserts that Defendants violated their obligations in the Terms of Use agreement issued to each putative class member.[21] Nelson alleges that Defendants engaged in a pattern of "sham investigations" of fraudulent charges and refused to refund unauthorized or fraudulent charges to recipients.[22]

On July 13, 2018, the Court granted in part and denied in part Defendants' motion to dismiss.[23] The Court dismissed Nelson's claims for conversion, unjust enrichment, and declaratory judgment, but permitted the remainder of Nelson's claims — including his putative class claims — to proceed.[24] On November 26, 2019, Nelson filed the instant motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3).[25] Defendants filed their response in opposition to class certification on January 16, 2020.[26] Nelson filed his reply on February 13, 2020.[27] The Court held oral argument on Nelson's motion on July 23, 2020.

---

[21]   ECF 1, ¶ 26.

[22]   *Id*. ¶ 27.

[23]   ECF 16.

[24]   *Id*.

[25]   ECF 47.

[26]   ECF 51.

[27]   ECF 56.

## II.    LEGAL STANDARD

A party seeking class certification must satisfy Federal Rule of Civil Procedure 23. Compliance with Rule 23 demands a higher measure of proof than the general federal pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To certify a class, the party must "affirmatively demonstrate [its] compliance with the Rule." *Id. See also Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) ("The party seeking class certification has a burden of *proof*, not a burden of pleading. [It] must affirmatively demonstrate [its] compliance with Rule 23 by proving that the requirements are *in fact* satisfied.") (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis in original) (punctuation omitted). Rule 23(a) contains four explicit prerequisites to certify a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

These elements are colloquially known as the "prerequisites of numerosity, commonality, typicality, and adequacy of representation, and [ ] are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The failure to establish any one of these four factors precludes certification. *In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 321 F.R.D. 430, 437 (N.D. Ga. 2017).

Although not explicit in Rule 23(a), it is well established that, "[b]efore a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must show that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.")). This prerequisite—commonly referred to as the "ascertainability" element—is considered an "implicit requirement" of Rule 23(a). *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010) ("[C]ourts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class.").

Once the party seeking certification demonstrates compliance with Rule 23(a), he must satisfy one of the three requirements found in Rule 23(b). Nelson seeks certification of a consumer class action pursuant to Rule 23(b)(3), which states:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*See also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) ("Rule 23(b)(3) . . . additionally requires findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority').").

While the Court must remain mindful that the "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Dukes*, 564 U.S. at 348, it retains "broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citing *Coon v. Ga. Pacific Co.*, 829 F.2d 1563, 1566 (11th Cir. 1987)). This interplay requires the Court to "conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class."

*Vega*, 564 F.3d at 1266 (citing *Martinez–Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). The Court must "probe behind the pleadings before coming to rest on the certification question," as the "rigorous analysis" frequently entails some overlap with the merits of the underlying claim. *Dukes*, 564 U.S. at 350 (citing *Falcon*, 457 U.S. at 160). To the extent that a "question of fact or law *is* relevant to [whether the Rule 23 prerequisites are satisfied], then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *Brown*, 817 F.3d at 1234.

## III.   DISCUSSION

Defendants initially opposed class certification as to the ascertainability, commonality, and predominance elements of Rule 23. During oral argument, Defendants conceded that Nelson's amendment to the class definition—replacing "incurred" with "reported"—satisfied their ascertainability objection. As such, the Court will address the commonality and predominance elements.

### A. Nelson Has Satisfied Rule 23(a)(2): the Commonality Element.

The commonality element requires Nelson to establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The common question invoked "must be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The crux of this element is not "the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. Substantial "[d]issimilarities within the proposed class" may be fatal to certification. *Id*. At bottom, despite the more exacting standard articulated by the Supreme Court in *Dukes*, Rule 23(a)(2) does not "require that all the questions of law and fact raised by the dispute be common, or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268 (internal citations and punctuations omitted). Instead, "even a single common question will do." *Dukes*, 564 U.S. at 359.

Nelson identifies two question common to the proposed class: (1) whether Defendants breached the Terms of Use by failing to limit the putative class members' losses from reported unauthorized charges; and (2) whether Defendants are otherwise not liable based on discretionary language found in other portions of the Terms of Use.[28] Defendants argue Nelson's raising of these two questions—

---

[28]   ECF 47-1, at 17 (SEALED).

even if common to the proposed class—is insufficient under Rule 23(a)(2), as the questions do not generate common answers and will require extensive individualized determinations.

The Court does not agree. Nelson's common questions probe whether Defendants have engaged in a pattern of conduct after a report of fraud that has affected the class members in the same manner; *i.e.*, whether Defendants have breached the Terms of Use contract. This hallmark is generally sufficient to satisfy Rule 23(a)(2). *E.g., In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) ("Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met.").

Moreover, Nelson's common questions arise out of the performance of a form contract common to each member of the proposed class. Such allegations are routinely found sufficient to establish the less rigorous commonality element. *Kleiner v. First Nat. Bank of Atl.*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (collecting cases). *See also Rivell v. Private Health Care Sys., Inc.*, No. CV 106-176, 2009 WL 10318921, at *5 (S.D. Ga. Aug. 24, 2009)

("PHCS used a number of standardized form contracts with nearly identical terms. This Court will need only to interpret these contracts to determine whether the contracts authorized PHCS to sell network access to Capella and permitted Capella to use Plaintiffs' identities and information. Because the same contracts were used for each class member, the Court finds that the commonality requirement has been met.").

Defendants emphasize that individual questions permeate the class claims, including how Defendants investigated each report of fraud to determine their veracity and the reasons why Defendants ultimately denied each consumer's claim. The Court agrees these individual issues exist, but finds they are not fatal to the commonality question. The level of proof required for Rule 23(a)(2) is less exacting; the "existence of individual questions concerning class members does not necessarily defeat the commonality requirement." *Kleiner*, 97 F.R.D. at 692. To satisfy Rule 23(a)(2), common questions need not "be unanimous." *Id*. And since Nelson has raised questions common to the class based on the alleged breach of a standard form contract, these questions may well elicit common answers, thereby resolving the issues with one stroke. The Court finds that Nelson has established the commonality element.

### B.  Nelson Has Not Satisfied Rule 23(b)(3): the Predominance Element.

Nelson brings this consumer class action under Rule 23(b)(3). The Supreme Court has described Rule 23(b)(3) as an "adventuresome innovation . . . designed for situations in which class-action treatment is not as clearly called for." *Behrend*, 569 U.S. at 34. To certify a consumer class action under Rule 23(b)(3), Nelson bears the burden of establishing: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vega*, 564 F.3d at 1277.

The "central and overriding prerequisite of a Rule 23(b)(3) class" is the predominance of common questions over individual questions. *Id.* at 1278. Predominance is "far more demanding than the commonality requirement found in Rule 23(a)(2), and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). The party seeking certification must show that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, [ ] predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (citing *Kerr*

*v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability . . . and monetary relief." *Babineau*, 875 F.2d at 1558 (punctuation omitted).

Predominance, however, "does not require that every issue in the case be susceptible of common proof." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 682 (N.D. Ga. 2016). *See also Brown*, 817 F.3d at 1235 ("[P]redominance requires a qualitative assessment too; it is not bean counting, and the relative importance of the common versus individual questions also matters.") (citing *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)). So long as "one or more of the central issues in the action are common to the class and can be said to predominate," then a class action may be certified, "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Such identified "common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau*, 576 F.3d at 1191 (punctuation omitted).

Nelson's proposed class definition asserts breach of contract claims—potentially numbering in the hundreds-of-thousands—against Defendants based on their compliance with the Terms of Use agreement. Per the agreement, Michigan law governs each claim.[29] Under Michigan law, the elements of a breach of contract claim are "(1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 718 (E.D. Mich. 2005) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Here, the Court finds that individual issues regarding the 'breach' element predominate over common questions for three separate reasons. First, Nelson seeks to represent a putative class of cardholders who "reported fraudulent charges on their accounts and were denied a refund of such charges in violation of Defendants' Terms of Use."[30] The breadth of this proposed class definition includes customers who reported a transaction that was not, in fact, fraudulent or unauthorized. Put another way, some putative class members may have no legitimate claim for a refund. Courts routinely decline to certify such overbroadly

---

[29]   ECF 47-6, ¶ 20 (SEALED).

[30]    ECF 67.

defined classes. *E.g., Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification because "it impermissibly includes members who have no cause of action as a matter of law"); *Peterson v. Aaron's, Inc.*, No. 1:14-cv-1919-TWT, 2017 WL 364094, at *3 (N.D. Ga. Jan. 25, 2017) (finding "fatal flaws" in plaintiffs' class definition because "[t]he proposed class includes numerous household members and employees who have not been injured and thus have no cause of action"). Indeed, each and every putative class member would be required to present extensive individualized evidence just to show he or she has a claim at the starting gate. Such inquiries are not susceptible to class-wide proof.

Second, despite their similarities, the Terms of Use for each state are not identical. For example, four of the states—including Georgia—have language in the Terms of Use that states: "If you tell us within two business days, you can lose no more than $50 if someone used your Card or PIN without your permission."[31] The Terms of Use issued in the remaining 13 states contains an additional provision shifting the burden to the customer to affirmatively prove usage without the customer's permission:

---

[31]   *E.g.*, ECF 47-6, ¶ 11 (SEALED).

> You are responsible for all authorized uses of your Card except as set forth below; you will not be responsible for an unauthorized use of your Card. An "unauthorized" use is a withdrawal or transaction that you or someone you authorized did not transact. We may refuse to reimburse you for a transaction you assert is unauthorized if: (1) you give your Credit Card number, and/or PIN, to another person who you expressly or implicitly authorize to use your Card, even if that person withdraws or purchases more than you authorized.[32]

This provision makes the secrecy of the card number and PIN—as well as express or implied authorization—necessary elements of each customer's cause of action. But Nelson's class definition assumes the putative class members have already satisfied their burden on this element. This makes the proposed class inappropriate for certification, because in reality each putative class member will need to submit individualized evidence demonstrating that neither express nor implied authorization was granted for the charges at issue. *See Hurt v. Shelby Cnty. Bd. of Educ.*, No. 2:13-cv-230-VEH, 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014) (declining to certify "fail-safe class" because "the class definition is essentially circular. It defines its members on the presumption that such members have viable claims against the defendant. So, the class definition assumes what it ostensibly seeks to prove.").

---

[32]   ECF 47-10, ¶ 10 (SEALED).

Finally, even in the minority of states that do not make the secrecy of the card number and PIN a necessary element of the cause of action, Defendants may nevertheless employ this as an affirmative defense to those individualized claims. As a general rule, "individual affirmative defenses [ ] do not defeat predominance," but "affirmative defenses are still relevant to the question of predominance." *Brown*, 817 F.3d at 1240. In *Brown*, the Eleventh Circuit noted that individual affirmative defenses may defeat predominance if they (1) "could apply to the vast majority of class members and raise complex, individual questions," or (2) "could be coupled with several other individual questions." *Id.* (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1177–83 (11th Cir. 2010); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 147 n.25 (3d Cir. 1998)).

The potential affirmative defenses here will involve the submission of significant individualized evidence by Defendants regarding the merits of the putative class members' claims in those states. And to ostensibly assume Defendants' liability by preventing them from litigating these affirmative defenses would be to violate the Rules Enabling Act. 28 U.S.C. § 2072(b). *See Dukes*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual

claims."); *Sacred Heart*, 601 F.3d at 1176 ("The Rules Enabling Act . . . prevents the use of class actions from abridging the substantive rights of any party.").

In sum, the putative class claims will inevitably contain some factual overlap. But this is not enough to certify this particular proposed class. *See Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 702 (N.D. Ga. 2012). The Court's review must involve a "pragmatic assessment of the entire action and all the issues involved." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019). Contrary to Nelson's characterizations, this includes probing the underlying merits of the individual claims. *Dukes*, 564 U.S. at 350 (citing *Falcon*, 457 U.S. at 160); *Brown*, 817 F.3d at 1234. At the core of these class claims is not a question of how Defendants interpreted the Terms of Use; rather, it is that Defendants' course of conduct ***in each individual circumstance*** of reported fraud breached the material terms of the agreement. Put another way, while the end result of all the claims in the class may be the same—*i.e.*, the putative class member did not receive a refund—not all putative class members will have been denied a refund for the same reason. Each class member's claim will require individualized proof that makes it unmanageable for treatment on a class-wide basis. Since these individual issues predominate, this proposed class cannot be certified. *Babineau*, 576 F.3d at 1191. *See also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235–36 (11th Cir.

2000) ("Serious drawbacks to the maintenance of a class action are presented where initial determinations, such as the issue of liability vel non, turn upon highly individualized facts."); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) ("[P]laintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination. . . . [E]ven factual issues that are common to many of the [ ] plaintiffs . . . will require highly case-specific determinations at trial. These issues are clearly predominant over the only issue arguably common to the class.").[33]

## IV.        CONCLUSION

Nelson's motion for class certification [ECF 47] is **DENIED**. Within 14 days after the entry of this Order, the parties are **DIRECTED** to file a joint, modified scheduling order proposing future deadlines in this case.

**SO ORDERED** this the 18th day of September 2020.

_____
Steven D. Grimberg
United States District Court Judge

---

[33]    Because the Court concludes that the putative class cannot be certified, it need not address the remaining Rule 23 factors (ascertainability, numerosity, typicality, adequacy of representation, and superiority).